UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FRANK'S LANDING INDIAN COMMUNITY, a federally recognized self-governing dependent Indian community,<br><br>                    Plaintiff,<br><br>          v.<br><br>NATIONAL INDIAN GAMING COMMISSION, et al.,<br><br>                    Defendants. | CASE NO. C15-5828BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants National Indian Gaming Commission ("NIGC") and Jonodev Chaudhuri's, in his official capacity as Chairman of the NIGC ("Chairman"), motion to dismiss (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

# I. PROCEDURAL HISTORY

On November 13, 2015, Plaintiff Frank's Landing Indian Community ("Community") filed a complaint against Defendants NGIC; the Chairman; the United States Department of the Interior; Sally Jewell, in her official capacity as the Secretary of the Interior ("Secretary"); and Lawrence S. Roberts[1], in his official capacity as Assistant Secretary of the Interior Indian Affairs, United States Department of the Interior.  Dkt. 1 ("Comp.").  The Community seeks injunctive and declaratory relief that it qualifies as a nationally recognized Indian tribe under the Indian Gaming Regulatory Act of 1988, 25 U.S.C. 2701 *et. seq.* ("IGRA").

On May 12, 2016, the Commission and the Chairman (collectively "Defendants") moved to dismiss for lack of jurisdiction and for failure to state a claim.  Dkt. 19.  On June 17, 2016, the Community responded.  Dkt. 24.  On July 1, 2016, the Commission and Chairman replied.  Dkt. 27.

# II. FACTUAL BACKGROUND

**A.    Relevant Statutes and Regulations**

"Congress passed the Indian Gaming Regulatory Act in 1988 in order to provide a statutory basis for the operation and regulation of gaming by Indian tribes."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996) (citing 25 U.S.C. § 2702).  The IGRA established the NIGC within the Department of the Interior to oversee and regulate tribal

---

[1] Lawrence S. Roberts is now the Acting Assistant Secretary – Indian Affairs, and is hereby substituted for Kevin K. Washburn under Rule 25(d) of the Federal Rules of Civil Procedure.

gaming under the IGRA, *see* 25 U.S.C. §§ 2702(3), 2704(a), 2706(b), and to take

enforcement actions for violations of the statute. *Id.* § 2713. The NIGC is made up of a

Chairman and two Commissioners, each of whom serves on a full-time basis for a three-

year term.

Under the IGRA, "[a]n Indian tribe may engage in, or license and regulate, class II

gaming on Indian lands within such tribe's jurisdiction, if — the governing body of the

Indian tribe adopts an ordinance or resolution which is approved by the Chairman." 25

U.S.C. § 2710(b)(1). The IGRA defines "Indian tribe" as:

> any Indian tribe, band, nation, or other organized group or community of
> Indians which –
>      is recognized as eligible by the Secretary for the special programs
> and services provided by the United States to Indians because of their status
> as Indians, and
>      is recognized as possessing powers of self-government.

25 U.S.C. § 2703(5). Similarly, the federal regulations provide as follows:

> Indian tribe means any Indian tribe, band, nation, or other organized
> group or community of Indians that the Secretary recognizes as
>      (a) Eligible for the special programs and services provided by the
> United States to Indians because of their status as Indians; and
>      (b) Having powers of self-government.

25 C.F.R. § 502.13.

In 1994, Congress enacted the List Act, Pub. L. No. 103-454 (1994) (codified at

25 U.S.C. § 479a-1), which provides that "[t]he Secretary shall publish in the Federal

Register a list of all Indian tribes which the Secretary recognizes to be eligible for the

special programs and services provided by the United States to Indians because of their

status as Indians." 25 U.S.C. § 479a-1. The List Act defines "Indian tribe" as "any

Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe." 25 U.S.C. § 479a.

**B.     Current Dispute**

The Community is a federally-recognized self-governing dependent Indian community located along the Nisqually River near Olympia, Washington. Comp. ¶ 3. In 1987, Congress recognized the Community's members "as eligible for the special programs and services provided by the United States to Indians because of their status as Indians" and "as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services." Pub. L. No. 100-153, § 10, 101 Stat. 886, 889 (1987). In 1994, Congress amended the law to state that the Community is recognized "as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe." Pub. L. No. 103-435, § 8, 107 Stat. 4566, 4569 (1994). This amendment stated that "[n]othing in this section may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe." *Id*. The section also noted that "notwithstanding any other provision of law," the Community "shall not engage in any class III gaming activity" under the IGRA. *Id*.

On December 9, 2014, the Community submitted a purported Class II gaming ordinance to the NIGC for the Chairman's review and approval along with a resolution from the Community's governing body, enacting the ordinance. Comp. ¶ 26. The NIGC referred the matter to Interior's Office of the Solicitor, requesting an opinion on whether the Community is a tribe within the meaning of the IGRA, who referred the matter to the

1    Assistant Secretary – Indian Affairs ("AS-IA"), Kevin Washburn.  *Id.*, ¶ 27.  On March 6,

2    2015, the AS-IA issued a memorandum to the NIGC Chairman conveying Interior's

3    conclusion that the Community is not an Indian tribe within the meaning of the IGRA

4    because it is not a federally-recognized Indian tribe.  *Id.* ¶ 30.  This memorandum

5    attached another memorandum prepared by the Office of the Solicitor of the Department

6    of the Interior, explaining its legal conclusion that only federally-recognized tribes are

7    entitled to engage in gaming under the IGRA.

8         The same day, the Chairman issued a letter to the Community's Chairperson

9    indicating that, based on the AS-IA's determination that the Community is not a tribe

10   under the IGRA, the Community's submission was not a "tribal ordinance" under the

11   IGRA. The Chairman thus indicated that he could not accept the Community's gaming

12   ordinance because it was beyond the scope of his review.  *Id.*, ¶ 31; Ex. A at 1, 4.[2]  The

13   letter also noted that the Chairman "did not approve or disapprove this ordinance,

14   because it does not qualify as a tribal ordinance submission for purposes of IGRA," but

15   even if it were a disapproval, "the Community would not possess any appeal rights under

16   NIGC regulations, 25 C.F.R. Part 582, since the Community is not an 'Indian tribe' under

17   IGRA and, therefore, would lack standing to appeal."  Ex. A at 4 n.23; Comp. ¶ 32.

18        On September 18, 2015, the Community submitted requests for reconsideration to

19   the AS-IA and the Chairman.  On October 28, 2015, the Office of the AS-IA issued an

20   _____

21        [2] Defendants request that the Court consider this letter, even though it is outside the
     complaint, because its authenticity is not contested and the Community's complaint necessary
22   relies upon it.  There being no objection from the Community, the Court agrees with Defendants
     and will consider the letter.  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

1  email to the Community's legal counsel indicating that the AS-IA would not reconsider

2  the issue.  *Id.*, ¶ 36.  The NIGC Chairman did not respond to the request for

3  reconsideration.  *Id.*, ¶ 39.

4       This suit for declaratory and injunctive relief followed.

5  <center>**III. DISCUSSION**</center>

6       Defendants move to dismiss for lack of jurisdiction and for failure to state a claim.

7  Upon review of the briefs, the Court must only address the failure to state a claim portion

8  of the motion.

9  **A.    Standard**

10       Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil

11  Procedure may be based on either the lack of a cognizable legal theory or the absence of

12  sufficient facts alleged under such a theory.  *Balistreri v. Pacifica Police Department*,

13  901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the

14  complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295, 1301

15  (9th Cir. 1983).  To survive a motion to dismiss, the complaint does not require detailed

16  factual allegations but must provide the grounds for entitlement to relief and not merely a

17  "formulaic recitation" of the elements of a cause of action.  *Bell Atlantic Corp. v.*

18  *Twombly,* 127 S. Ct. 1955, 1965 (2007).  Plaintiffs must allege "enough facts to state a

19  claim to relief that is plausible on its face."  *Id.* at 1974.

20  **B.    IGRA and List Act**

21       The Community asserts that (1) it is an Indian tribe under the IGRA and (2)

22  Defendants acted arbitrarily, capriciously, and not in accordance with law by relying on

ORDER - 6

1   the list of federally recognized tribes to deny the Community's status as a tribe under the

2   IGRA.  Comp. ¶¶ 40-53 (Counts I and II).  The Community argues that Defendants are

3   bound by Congress's recognition of the Community as a self-governing Indian

4   community eligible for special Indian programs and services.  Dkt. 24 at 15.  The

5   problem with the Community's argument is that Defendants are not bound by Congress's

6   recognition of the Community because the IGRA unambiguously states that the

7   community of Indians must be recognized by the Secretary of the Interior, not by

8   Congress.  25 U.S.C. § 2703(5).  Why Congress recognizes the Community as eligible

9   for special services and self-governing and the Secretary did not when asked by the

10  Chairman is an issue beyond the scope of the instant motion.[3]  However, the IGRA and

11  implementing regulations specifically rely on the Secretary's recognition of the Indian

12  tribe as eligible "for the special programs and services provided by the United States to

13  Indians . . . ."  25 U.S.C. § 2703(5); 25 C.F.R. § 502.13.

14      Furthermore, the Community fails to identify any authority that gives the NIGC or

15  the Chairman the authority to override the Secretary's decision.  More importantly, the

16  _____

17      [3] Without further explanation, the Secretary appears to be acting not in accordance with
    law.  If Congress passes laws stating that the Community is qualified to receive benefits, is self-
18  governing, and precluded from Class III gaming (Pub. L. No. 103–435, § 8 (Nov. 2, 1994)), then
    it would seem that the Community qualifies under the IGRA to at least be considered for Class II
19  gaming.  Moreover, the List Act appears to be irrelevant to any qualification under the IGRA
    because the IGRA includes both "Indian tribe" and "community of Indians" (25 U.S.C. §
20  2710(b)(1)) whereas the List Act defines "Indian tribe" to include a "community that the
    [Secretary] acknowledges to exist as an Indian tribe" (25 U.C.S. § 479a).  In other words, the
21  IGRA does not explicitly state that a community of Indians must be a federally recognized
    Indian tribe.  The Court, however, recognizes that the Secretary took no part in the instant
22  motion and may have a legitimate reason for her response to the Chairman.  Thus, this issue must
    be addressed at a later date.

1   Community fails to provide any authority for the proposition that the Court may order the

2   NIGC to recognize the Community as eligible for class II gaming under the IGRA.  "[A]n

3   agency cannot be held accountable for the effects of actions it has no discretion not to

4   take." *Florida Key Deer v. Paulison*, 522 F.3d 1133, 1144 (11th Cir. 2008) (citing

5   *Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004)).  While it is

6   possible for the Community to challenge the Secretary's refusal to include the

7   Community on the list published yearly in the federal register, *see Cherokee Nation of*

8   *Oklahoma v. Babbitt*, 117 F.3d 1489 (D.C. Cir. 1997), the Community's instant dispute is

9   with the Secretary and not the NIGC.  In fact, any ruling that the NIGC has the authority

10  to approve a gaming license for a community that the Secretary has not recognized would

11  effectively convey more authority on the NIGC than Congress explicitly intended in the

12  IGRA. Therefore, the Court grants Defendants' motion to dismiss because the

13  Community has failed to state a legally cognizable claim against the NGIC and the

14  Chairman.

15  **C.    Administrative Appeal**

16       The Community alleges that Defendants acted arbitrarily, capriciously, and not in

17  accordance with law when it denied the Community an administrative appeal.  Comp. ¶¶

18  54-59.  However, the IGRA provides that "[d]ecisions made by the [NIGC] pursuant to

19  sections 2710, 2711, 2712, and 2713 of this title shall be final agency decisions for

20  purposes of appeal to the appropriate Federal district court . . . ."  25 U.S.C. § 2714.  A

21  decision that the Community is not an "Indian tribe" as defined in the IGRA is made

22  pursuant to 25 U.S.C. § 2703(5).  Thus, the IGRA does not authorize an appeal of the

1   NIGC's decision that the Community is not an Indian tribe.  This conclusion makes sense

2   in the statutory framework because, as set forth above, the Community's dispute

3   regarding qualification under the IGRA as an "Indian tribe" is with the Secretary and not

4   with the NIGC or the Chairman.  Therefore, the Court grants Defendants' motion to

5   dismiss on this issue because the Community has failed to state a legally cognizable

6   claim.

7        The Community cites *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F.

8   Supp. 2d 1193 (D. Kan. 2006) for the proposition that definition decisions such as

9   "Indian tribe" and "Indian lands" are decisions made under 25 U.S.C. 2710.  Dkt. 24 at

10  25-27.  *Wyandotte Nation*, however, is distinguishable because the NIGC issued an

11  explicit final agency action in that case.  *Id*. at 1201 ("on September 10, 2004, the NIGC

12  issued a final agency decision and order finding that the Tribe may not lawfully game on

13  the Shriner Tract . . . .").  The reason the NIGC decided to issue a final agency decision in

14  that case is beyond the scope of this matter and is not binding authority for the

15  proposition that the NGIC must issue a final agency action whenever a definition is in

16  dispute.  Moreover, an administrative appeal would be pointless in this matter because

17  Congress did not delegate authority to the NGIC to override decisions of the Secretary as

18  to whether a community is an "Indian tribe."  Thus, the Community's position is without

19  merit.

20  //

21  //

22  //

ORDER - 9

<div align="center">

**IV. ORDER**

</div>

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 19) is

**GRANTED**.  The Clerk shall terminate the NIGC and the Chairman.

Dated this 15th day of August, 2016.

BENJAMIN H. SETTLE
United States District Judge