1
2
3
4
5            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
6                    AT TACOMA

7
FRANK'S LANDING INDIAN
8 COMMUNITY,                              CASE NO. C15-5828BHS

9                    Plaintiff,           ORDER DENYING PLAINTIFF'S
                                          MOTION FOR SUMMARY
10        v.                              JUDGMENT AND GRANTING
                                          DEFENDANTS' MOTION FOR
11 NATIONAL INDIAN GAMING                 SUMMARY JUDGMENT
   COMMISSION, et al.,
12
                     Defendants.
13

14        This matter comes before the Court on the motion for summary judgment of

15 Plaintiff Frank's Landing Indian Community (the "Community"). Dkt. 33. Also before

16 the Court is the cross-motion for summary judgment of the United States Department of

17 the Interior (the "Department"), Sally Jewell, in her official capacity as the Secretary of

18 the Interior (the "Secretary"), and Lawrence S. Roberts,[1] in his official capacity as

19 Assistant Secretary of the Interior Indian Affairs ("Roberts") (collectively "Defendants").

20

21        [1] Lawrence S. Roberts is now the Acting Assistant Secretary – Indian Affairs, and has
   been substituted for Kevin K. Washburn pursuant to Rule 25(d) of the Federal Rules of Civil
22 Procedure.

The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and, for the reasons explained below, hereby (1) denies the Community's motion and (2) grants Defendants' motion.

## I. PROCEDURAL HISTORY

On November 13, 2015, the "Community filed its complaint against the National Indian Gaming Commission; Jonodev Chaudhuri, in his official capacity as Chairman of the National Indian Gaming Commission (the "Commission"); the Department; the Secretary; and Roberts. Dkt. 1. The Community seeks injunctive and declaratory relief that it qualifies as an Indian tribe under the Indian Gaming Regulatory Act of 1988, 25 U.S.C. 2701 *et. seq.* ("IGRA").

On May 12, 2016, the Commission and the Chairman moved to dismiss for lack of jurisdiction and for failure to state a claim. Dkt. 19. On August 15, 2016, the Court granted the Commission and the Chairman's motion to dismiss. Dkt. 29. In granting the motion, the Court explained that "the Community's dispute regarding qualification under the IGRA as an 'Indian tribe' is with the Secretary and not with the NIGC or the Chairman." *Id.* at 9.

On November 4, 2016, the Community moved for summary judgment. Dkt. 33. On January 13, 2017, Defendants responded with their cross-motion for summary judgment. Dkt. 38. On February 10, 2017, the Community replied. Dkt. 39. On March 1, 2017, Defendants replied. Dkt. 40.

## II. FACTUAL BACKGROUND

**A.    Relevant Statutes and Regulations**

"Congress passed the Indian Gaming Regulatory Act in 1988 in order to provide a statutory basis for the operation and regulation of gaming by Indian tribes." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996) (citing 25 U.S.C. § 2702). The IGRA established the NIGC within the Department of the Interior to oversee and regulate tribal gaming under the IGRA, *see* 25 U.S.C. §§ 2702(3), 2704(a), 2706(b), and to take enforcement actions for violations of the statute. *Id*. § 2713. The NIGC is made up of a Chairman and two Commissioners, each of whom serves on a full-time basis for a three-year term.

Under the IGRA, "[a]n Indian tribe may engage in, or license and regulate, class II gaming on Indian lands within such tribe's jurisdiction, if — the governing body of the Indian tribe adopts an ordinance or resolution which is approved by the Chairman." 25 U.S.C. § 2710(b)(1). The IGRA defines "Indian tribe" as:

> **(5)** . . . any Indian tribe, band, nation, or other organized group or community of Indians which—
>> **(A)** is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians, and
>> **(B)** is recognized as possessing powers of self-government.
> * * *
> **(10)** The term "Secretary" means the Secretary of the Interior.

25 U.S.C. § 2703. Similarly, under the federal regulations promulgated by the Secretary for administration of the IGRA:

> Indian tribe means any Indian tribe, band, nation, or other organized group or community of Indians that the Secretary recognizes as—

1
(a) Eligible for the special programs and services provided by the
United States to Indians because of their status as Indians; and

2
(b) Having powers of self-government.

3
25 C.F.R. § 502.13.

4
In 1994, Congress enacted the Federally Recognized Indian Tribe List Act (the

5
"List Act"), Pub. L. No. 103-454 (1994) (codified at 25 U.S.C. §§ 5130, 5131), which

6
provides that:

7
For the purposes of this title:
**(1)** The term "Secretary" means the Secretary of the Interior.

8
**(2)** The term "Indian tribe" means any Indian or Alaska Native tribe,
band, nation, pueblo, village or community that the Secretary of the Interior

9
acknowledges to exist as an Indian tribe.

10
25 U.S.C. § 5130 (formerly § 479a). The List Act also requires the Secretary to publish

11
and maintain a list of recognized "Indian tribes," stating:

12
**(a)  Publication of list**
The Secretary shall publish in the Federal Register a list of all Indian

13
tribes which the Secretary recognizes to be eligible for the special programs
and services provided by the United States to Indians because of their status

14
as Indians.
**(b) Frequency of publication**

15
The list shall be published within 60 days of November 2, 1994, and
annually on or before every January 30 thereafter.

16
25 U.S.C. § 5131 (formerly § 479a-1).

17
To obtain recognition by the Secretary as an "Indian tribe" under the List Act, an

18
Indian or Alaskan Native tribe, band, nation, pueblo, village or community must submit

19
an application to the Secretary by documented petition pursuant to 25 C.F.R. § 83.20 and

20
show that it satisfies the criteria set forth in 25 C.F.R. § 83.11.

21

22

**B.    Current Dispute**

The Community is a self-governing dependent Indian community located along the Nisqually River near Olympia, Washington. In 1987, Congress recognized the members of the Community "as eligible for the special programs and services provided by the United States to Indians because of their status as Indians" and "as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services." Pub. L. No. 100-153, § 10, 101 Stat. 886, 889 (1987) (the "1987 Frank's Landing Act"). In 1994, Congress amended the law to state the following:

> (**a**) Subject to subsection (b), the Frank's Landing Indian Community in the State of Washington is hereby recognized;
> (**1**) as eligible for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services, but the provisio in section 4(c) of such act (25 U.S.C. 450b(c)) shall not apply with respect to grants awarded to, and contracts entered into with, such community; and
> (**2**) as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe.
> (**b**)(**1**) Nothing in this section may be construed to alter or affect the jurisdiction of the State of Washington under section 1162 of title 18, United States Code.
> (**2**) Nothing in this section may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe.
> (**3**) Nothwithstanding any other provision of law, the Frank's Landing Indian Community shall not engage in any class III gaming activity (as defined in section 3(8) of the Indian Gaming Regulatory Act of 1988 (25 U.S.C. 2703(8))).

Pub. L. No. 103-435, § 8, 107 Stat. 4566, 4569 (1994) (the "1994 Amendment").

1    On December 9, 2014, the Community submitted a purported Class II gaming

2    ordinance to the NIGC for the Chairman's review and approval along with a resolution

3    from the Community's governing body enacting the ordinance. Dkt. 1. The NIGC

4    referred the matter to Interior's Office of the Solicitor, requesting an opinion on whether

5    the Community is a tribe within the meaning of the IGRA, who referred the matter to the

6    Assistant Secretary – Indian Affairs ("AS-IA"), Kevin Washburn. *Id.* On March 6, 2015,

7    the AS-IA issued a memorandum to the NIGC Chairman conveying Interior's conclusion

8    that the Community is not an Indian tribe within the meaning of the IGRA because it is

9    not a federally-recognized Indian tribe. *Id*. This memorandum attached another

10   memorandum prepared by the Office of the Solicitor of the Department of the Interior,

11   explaining its legal conclusion that only tribes recognized by the Secretary under the List

12   Act are entitled to engage in gaming under the IGRA. *See* AR 0080 (memorandum

13   stating that the List Act provides "a definitive means of determining whether an entity is

14   a federally-recognized Indian tribe" for purposes of the IGRA).

15       The same day, the Chairman issued a letter to the Community's Chairperson

16   indicating that, based on the AS-IA's determination that the Community is not a

17   recognized "Indian tribe" under the IGRA, the Community's submission was not a "tribal

18   ordinance." The Chairman thus indicated that he could not accept the Community's

19   gaming ordinance because it was beyond the scope of his review. *Id*.; Ex. A at 1, 4. The

20   letter also noted that the Chairman "did not approve or disapprove this ordinance,

21   because it does not qualify as a tribal ordinance submission for purposes of IGRA," but

22   even if it were a disapproval, "the Community would not possess any appeal rights under

1    NIGC regulations, 25 C.F.R. Part 582, since the Community is not an 'Indian tribe' under

2    IGRA and, therefore, would lack standing to appeal." Ex. A at 4 n.23.

3         On September 18, 2015, the Community submitted requests for reconsideration to

4    the AS-IA and the Chairman. On October 28, 2015, the Office of the AS-IA issued an

5    email to the Community's legal counsel indicating that the AS-IA would not reconsider

6    the issue. *Id.*, ¶ 36. The NIGC Chairman did not respond to the request for

7    reconsideration. *Id.*, ¶ 39.

8         This suit for declaratory and injunctive relief followed.

9                          **III. STANDARD OF REVIEW**

10        Summary judgment is proper only if the pleadings, the discovery and disclosure

11   materials on file, and any affidavits show that there is no genuine issue as to any material

12   fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

13   The moving party is entitled to judgment as a matter of law when the nonmoving party

14   fails to make a sufficient showing on an essential element of a claim in the case on which

15   the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

16   (1985). There is no genuine issue of fact for trial where the record, taken as a whole,

17   could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

18   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, the parties do not

19   present any factual disputes. *See* Dkt. 38 at 7. Instead, the sole issue before the Court is a

20   legal one; specifically, whether the Secretary supplied the Commission with an unlawful

21   interpretation of the term "Indian tribe" under the IGRA.

22

1    As an appeal from an administrative proceeding, the Community's claim is

2  governed by the Administrative Procedure Act ("APA"). The APA provides that a

3  "person suffering a legal wrong because of agency action, or adversely affected or

4  aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

5  relief thereof." [2] 5 U.S.C. § 702. When reviewing an agency action, the Court may set

6  aside the action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not

7  in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

8                                    **IV. DISCUSSION**

9    In this case, the Community contends that the Secretary's "bright-line" rule for the

10  interpretation of "Indian tribe" under the IGRA—which requires that the Community be

11  recognized by the Secretary pursuant to the List Act—is not in accordance with the law.

12  "When reviewing an agency's statutory interpretation under the APA's 'not in

13  accordance with law' standard, . . . [the Court] adhere[s] to the familiar two-step test of

14  *Chevron.*" *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008)

15  (quoting *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002)) (quotation

16  marks omitted). Under the first step, "if the intent of Congress is clear," the Court "must

17  give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v.*

18  *Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). However, "'if the statute is

19  _____

20    [2] Additionally, the APA requires that an agency "follow prescribed notice—and—
    comment procedures before promulgating substantive rules." *Sacora v. Thomas*, 628 F.3d 1059,
21  1069 (9th Cir. 2010) (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124
    (9th Cir. 2009)). However, the Community does not challenge the Secretary's guidance to the
    Commission on the basis that it is a substantive rule effected by the Secretary with insufficient
22  notice and comment under the APA. Therefore, this issue is not before the Court.

1    silent or ambiguous with respect to the specific issue,' . . . we go to step two, which

2    considers 'whether the agency's answer is based on a permissible construction of the

3    statute.'" *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055,

4    1062 (9th Cir. 2016) (quoting *Chevron*, 467 U.S. at 843).

5    **A.      Step One: Ambiguity in the IGRA and the Frank's Landing Act**

6            The dispute before the Court is whether the Secretary's "bright-line" rule resulted

7    in an unlawful determination that the Community is not an "Indian Tribe" within the

8    meaning of the IGRA. Accordingly, under *Chevron*, the Court must first determine

9    whether Congress has clearly established that the Community qualifies under the IGRA's

10   definition of "Indian tribe." *See Ramirez-Zavala v. Ashcroft*, 336 F.3d 872, 875 (9th Cir.

11   2003) ("Under *Chevron*, we must consider first whether Congress has directly spoken to

12   the precise question at issue.") (internal quotation marks omitted). The Court concludes

13   that Congress has not clearly established the Community as an "Indian tribe" under the

14   IGRA, and the Court is therefore presented with a statutory term that is subject to

15   administrative interpretation.

16           The Community argues that it clearly qualifies as an "Indian tribe" under IGRA

17   because Congress has expressly recognized the Community "as eligible for the special

18   programs and services provided by the United States to Indians because of their status as

19   Indians . . . and as a self-governing dependent Indian community that is not subject to the

20   jurisdiction of any federally recognized tribe." *See* the Frank's Landing Act 1994

21   Amendment. The Community then points to the nearly identical language in the IGRA to

22   argue that an Indian community qualifies as an "Indian tribe" if it (1) "is recognized as

1    eligible . . . for the special programs and services provided by the United States to Indians

2    because of their status as Indians," and (2) "is recognized as possessing powers of self-

3    government." 25 U.S.C. § 2703.

4           When reading these statutory provisions in isolation, the Community's argument

5    has a certain appeal. The Court acknowledged the cogency of this reasoning in its order

6    on the Commission's previous motion to dismiss.[3] However, the Court cannot rely upon

7    an isolated reading of these provisions. *Graham Cty. Soil & Water Conservation Dist. v.*

8    *U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes,

9    not isolated provisions.'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995)).

10   Instead, the Court must look to the entire text of the Frank's Landing Act and the IGRA.

11   Additionally, the "classic judicial task of reconciling many laws enacted over time, and

12   getting them to 'make sense' *in combination*, necessarily assumes that the implications of

13   a statute may be altered by the implications of a later statute." *Food & Drug Admin. v.*

14   *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (quoting *United States v.*

15   *Fausto*, 484 U.S. 439, 453 (1988)) (emphasis added). Therefore, the Court must also

16   consider what effect, if any, the List Act had on the definition of "Indian tribe" under the

17   IGRA.[4]

18

19   _____

20   [3] Dkt. 29 at 7 n.3. ("If Congress passes laws stating that the Community is qualified to
     receive benefits, is self-governing, and precluded from Class III gaming (Pub. L. No. 103–435, §
21   8 (Nov. 2, 1994)), then it would seem that the Community qualifies under the IGRA to at least be
     considered for Class II gaming.")

22   [4] The Court previously suggested in a footnote that "the List Act appears to be irrelevant
     to any qualification under the IGRA." Dkt. 29 at 7 n.3. However, that comment was extraneous

1    The Secretary argues that the IGRA, interpreted together with the List Act,

2  "demonstrates that IGRA is intended to encompass only *federally recognized tribes*,"

3  Dkt. 38 at 10 (emphasis added), and draws a distinction between federally recognized

4  tribes and the type of recognition extended by the Frank's Landing Act. To support this

5  argument, the Secretary emphasizes that the IGRA definition of "Indian tribe" requires

6  that the Community "is *recognized as eligible by the Secretary* for the special programs

7  and services provided by the United States to Indians because of their status as Indians."

8  25 U.S.C. § 5131(5)(A) (emphasis added). The Secretary then points to the nearly

9  identical language contained in the List Act which states: "The Secretary shall publish in

10 the Federal Register a list of all Indian tribes *which the Secretary recognizes to be*

11 *eligible* for the special programs and services provided by the United States to Indians

12 because of their status as Indians." 25 U.S.C. § 5131(a). Additionally, the List Act

13 provides that for the purposes of Title 25 of the U.S.C., "[t]he term 'Indian tribe' means

14 any Indian or Alaska Native tribe, band, nation, pueblo, village or community *that the*

15 *Secretary of the Interior acknowledges* to exist as an Indian tribe." 25 U.S.C. § 5130(2).

16    A holistic reading of the 1987 Frank's Landing Act and the 1994 Amendment

17 reveals a clear distinction between the limited recognition Congress has offered the

18 Community and that of "a federally recognized Indian tribe." The legislative history to

19 the 1987 Frank's Landing Act indicates that Congress did not intend to "create or to

20 establish Frank's Landing as a Federally-recognized Indian Tribe." Senate Report, S.

21 _____

22 to the Court's previous order and was made without receiving argument from the Secretary.
   Accordingly, the Court does not give any weight to its previous comment.

Rep. 100–186 (1987). The 1994 Amendment further states that nothing in the Frank's Landing Act "may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe." Pub. L. No. 103-435, § 8, 107 Stat. 4566, 4569 (1994). Additionally, the IGRA was enacted in 1988—meaning that, when enacting the 1987 Frank's Landing Act, Congress could not possibly have considered the Community's tribal status and gaming rights under the IGRA.

Consideration of the List Act creates even more doubt that Congress intended the Frank's Landing Act to recognize the Community as an "Indian tribe" under the IGRA. By explicitly referring to recognition by the Secretary, the language of the List Act more closely mirrors the IGRA's "Indian tribe" definition than does the Frank's Landing Act. The List Act also purports to define the meaning of "Indian tribe" throughout the entirety of Title 25 U.S.C., which includes the IGRA. As a subsequently enacted statute, List Act appears to refine the meaning of the terms "Indian tribe" and "recognized by the Secretary" as they appear in the IGRA and other related statutes. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 143 ("At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings."). Indeed, "a specific policy embodied in a later federal statute *should* control our construction of the priority statute, even though it ha[s] not been expressly amended." *United States v. Estate of Romani*, 523 U.S. 517, 530–31 (1998) (emphasis added). This is not to say that the List Act supersedes the numerous specific definitions for "Indian tribe" as found throughout the various acts that comprise Title 25;

1   but it is nonetheless reasonable to read the List Act to control the construction of those

2   "Indian tribe" definitions which expressly require recognition by the Secretary.

3         The Community argues in a footnote to their motion that the phrase "recognized

4   by the Secretary" as it appears in the IGRA should not distinguish "Indian tribe"

5   recognition under the IGRA from the type of recognition afforded to the Community by

6   the Frank's Landing Act. *See* Dkt. 33 at 20 n.4. Specifically, the Community points out

7   that the Frank's Landing Act extends recognition by the United States, which necessarily

8   includes the Secretary. *Id.* Also, the Community argues that the Secretary has already

9   implicitly recognized the Community "by the virtue of providing services directly to the

10  Community." *Id.*

11        While these considerations certainly relate to the permissibility of the Secretary's

12  interpretation of the IGRA "Indian tribe" definition as it applies to the Community, they

13  do not resolve the ambiguity of the Frank's Landing Act as it relates to the Community's

14  status under the IGRA. These arguments do not account for the fact that the Frank's

15  Landing Act expressly identifies separate levels of recognition by the United States: the

16  limited recognition afforded by the Frank's Landing Act and the full "federally

17  recognized Indian tribe" status contemplated in the Frank's Landing Act 1994

18  Amendment, subsection (b)(2). Moreover, the Community's arguments do not address

19  that the subsequently enacted List Act purports to modify the definition of "Indian tribe"

20  for the entirety of Title 25. *See* 25 U.S.C. § 5130 ("For the purposes of this *title* . . . ")

21  (emphasis added).

22

1   Therefore, despite Congress' clear intent in 1987 to recognize the Community as

2   "self-governing" and "eligible for the special programs and services provided by the

3   United States to Indians,"[5] it is not clear that Congress has intended to recognize the

4   Community as an "Indian tribe" under the IGRA. Accordingly, when reviewing whether

5   the Secretary's interpretation of "Indian tribe" under the IGRA as applied to the

6   Community is "not in accordance with the law," the Court concludes that it must proceed

7   to step two of its *Chevron* analysis and yield some level of deference to the Secretary's

8   administrative interpretation.

9   **B.      Step Two: Permissibility of the Secretary's Interpretation**

10   Under step two of the *Chevron* analysis, the Court must assess the permissibility

11   of the Secretary's action under one of two standards:

> **[1]** If Congress has *explicitly* left a gap for the agency to fill . . . [the
> agency's] regulations are given controlling weight unless they are arbitrary,
> capricious, or manifestly contrary to the statute. . . . **[2]** [If] the legislative
> delegation to an agency on a particular question is *implicit* . . . a court may
> not substitute its own construction of a statutory provision for a reasonable
> interpretation made by the administrator of an agency.

15   *Chevron*, 467 U.S. at 843–44 (emphasis added).

16   **1.      Explicit vs. Implicit Delegation**

17   The parties have not addressed which standard the Court should employ in

18   reviewing the Secretary's action. It appears that Congress may have explicitly delegated

19   authority to the Secretary to determine eligibility for IGRA privileges and benefits. The

---

21   [5] At the very least, Congress has expressly recognized the Community as eligible for the
22   special programs and services established ". . . under the Indian Self-Determination and
Education Assistance Act." *See* 1987 Frank's Landing Act.

IGRA explicitly refers to recognition by the Secretary for eligibility "for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 2703(5)(A). Additionally, Congress has authorized the Secretary and the Bureau of Indian Affairs (the "BIA") to regulate and manage all matters relating to Indian affairs under the direction of the Executive Branch. *See* 43 U.S.C. § 1457; 25 U.S.C. § 2; 25 U.S.C. § 9. Pursuant to this delegation of authority, the BIA has promulgated regulations establishing procedures for federal recognition of Indian groups as "Indian tribes." *See* 25 C.F.R. § 83. These regulations enable Indian groups seeking acknowledgment by the Secretary to apply for federal recognition. *See* 25 C.F.R. § 83.2. Accordingly, it would be appropriate to argue that the agency's regulatory scheme for recognition of "Indian tribe" status under the IGRA must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44.

However, Defendants and the Community have only presented arguments on the permissibility of the Secretary's interpretation under a "reasonableness" standard. While Defendants indicate that "Congress has . . . specifically delegated to Interior the authority to decide which Indian groups merit federal recognition as Indian tribes," Dkt. 38 at 9, they nonetheless proceed to argue they are entitled to summary judgment because the Secretary's "interpretation is reasonable and entitled to deference." Dkt. 38 at 10. In turn, the Community argues that it is entitled to relief because, "[i]n the event that the Court determines IGRA and the 1994 Frank's Landing Act to be ambiguous, the Court must nevertheless reject the Defendant's arguments as unreasonable." Dkt. 39 at 13.

Absent any argument on the issue, the Court will not decide whether the Secretary's interpretation of the IGRA must be evaluated for reasonableness or manifest error.[6] Nonetheless, because the Secretary's interpretation is permissible even under the less deferential reasonableness standard, the Court need not decide this legal standard issue in order to conclude that Defendants are entitled to summary judgment.

### 2.     Reasonableness of Secretary's Interpretation

The Secretary has interpreted the term "recognized as eligible by the Secretary," as it appears in the IGRA, to mean acknowledged by the Secretary under 25 U.S.C. § 5130 and listed by the Secretary in the Federal Register pursuant to 25 U.S.C. § 5131. This is a reasonable interpretation of the law.

Helpful to the Court is the manner in which the Ninth Circuit has construed the term "recognized by the Secretary" in another statute related to Indian tribes. In *Pit River Home & Agricultural Cooperative Association v. United States*, 30 F.3d 1088 (9th Cir. 1994), the Circuit examined whether an association of Indians was an "Indian tribe" as "recognized by the Secretary" for the purposes of conferring jurisdiction under  28 U.S.C.

---

[6] To the extent that the parties may dispute the appropriate standard of review that the Court must apply to the Secretary's decision, the Court believes this issue may be briefed on appeal. *See Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard, contrary to the congressional purpose."); Worth v. Tyer, 276 F.3d 249, 262 n.4 (7th Cir. 2001) ("[T]he court, not the parties, must determine the standard of review, and therefore, it cannot be waived."); *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) ("The parties' failure to brief and argue properly the appropriate standard may lead the court to choose the wrong standard. But no party has the power to control our standard of review.")

§ 1362. The Circuit concluded that an "Indian tribe" definition that included the phrase "recognized by the Secretary" referred to "federally recognized tribes," and that such recognition could be attained only through: "1) federal statutes or treaties recognizing the tribe; 2) organization under the IRA or recognition under the BIA's regulations; and 3) historical recognition." *Id.* at 1095.

It is reasonable to interpret the IGRA to require the type of recognition contemplated in *Pit River Home*, and the Frank's Landing Act clearly does not confer such federal recognition upon the Community. In a previous matter, Judge Leighton noted that the Community does not benefit from "federally recognized" tribal status, but rather, a uniquely limited form of recognition. *Nisqually Indian Tribe v. Gregoire*, 08-5069RBL, 2008 WL 1999830, *2, *8 (W.D. Wash. May 8, 2008). In that analysis, Judge Leighton relied upon the legislative history of the 1987 Frank's Landing Act and the express language of the 1994 Amendment to conclude that "Congress has already determined that the Community is *not* recognized by the United States as an Indian tribe." *Id.* at *8 (emphasis in original).

Although the Frank's Landing Act expressly recognizes the Community "as eligible for the special programs and services provided by the United States to Indians because of their status as Indians . . . and as a self-governing dependent Indian community," it does so with a specific reference to the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"). *See* Frank's Landing Act and the 1994 Amendment. The ISDEAA requires that a community be "recognized as eligible for the special programs and services provided by the United States," but does not require

recognition *by the Secretary*. PL 93–638, § 1017, January 4, 1975, 88 Stat 2203.

Accordingly, although the Secretary may already be providing the Community with

certain programs and services intended for Indians under the ISDEAA, this does not

mean that the Community may rely upon the Frank's Landing Act to confer "federally

recognized" tribal status.

    Also, the congressional findings for the List Act are a strong indication that the

Secretary reasonably interpreted IGRA's "Indian tribe" definition to require recognition

under the List Act. Mirroring the forms of recognition contemplated in *Pit River Home*,

Congress has stated that the list maintained by the Secretary should include all those

tribes "recognized by Act of Congress; by the administrative procedures set forth in part

83 of the Code of Federal Regulations . . . ; or by a decision of a United States court." PL

103–454, November 2, 1994, 108 Stat 4791. The findings also emphasize the importance

that the Secretary's list accurately "reflect all of the federally recognized Indian tribes" in

light of its functional purpose, stating:

> [T]he list published by the Secretary should be accurate, regularly updated, and regularly published, since it is used by the various departments and agencies of the United States to determine the eligibility of certain groups to receive services from the United States . . . .

*Id.* (emphasis added). From this, it appears that Congress intended for the agencies and

departments of the United States, such as the Gaming Commission, to rely upon the

Secretary's recognition under the List Act when determining Indian entities' eligibility

for services and programs provided by the United States to Indians because of their status

as Indians.

The Community's strongest argument is that Congress clearly contemplated that the Community may be eligible for class II gaming under the IGRA when amending the Frank's Landing Act in 1994. Subsection (b)(3) of the 1994 Amendment expressly prohibits class III gaming under the IGRA while remaining silent on class II gaming. However, the Court concludes that subsection (b)(3) is better read as an express limitation on the Community's gaming rights should the Community ever gain recognition under the Secretary's administrative procedures.

A key difference between the language of subsections (b)(1) and (2) and that of subsection (b)(3) supports this construction. While subsections (b)(1) and (2) state that "[n]othing in this section may be construed" to alter the criminal jurisdiction of Washington State or grant federal recognition to the Community, subsection (b)(3) states that "[n]otwithstanding any other provision of law" the Community shall not engage in class III gaming. If Congress had contemplated that the Frank's Landing Act would have the immediate effect of granting the Community rights under IGRA, it could have used the same language as it did in subsections (b)(1) and (2) to limit that immediate effect. However, Congress instead decided to broadly limit the Community's authority to ever conduct class III gaming, "notwithstanding any other provision of law." This indicates that Congress, while it did not intend to immediately establish the Community as a "federally recognized Indian tribe" with gaming rights, was aware of the possibility of future federal recognition and saw it as an imperative that the Community (with its limited form of recognition) not be authorized to class III gaming under any conditions.

1    Most important to the Court's analysis, however, is the fact that the Court's

2  construction of subsection (b)(3) gives meaning and effect to all the provisions of the

3  1994 Amendment, as well as the term "recognized by the Secretary" as it appears in the

4  IGRA "Indian tribe" definition and the List Act. If subsection (b)(3) was interpreted as an

5  express congressional recognition of class II gaming rights, it would render meaningless

6  the term "recognized by the Secretary" as it appears in the IGRA and the List Act,

7  circumventing the entire regulatory scheme established under those statutes. Furthermore,

8  such an interpretation would conflict with Congress' express refusal to recognize the

9  Community as a "federally recognized Indian tribe." The D.C. Circuit has observed that

10 Congress' delegation of authority to the Executive to regulate Indian affairs and the

11 resulting regulatory scheme for seeking federal recognition "would be frustrated if the

12 Judicial Branch made initial determinations of whether groups have been recognized

13 previously or whether conditions for recognition currently exist." *James v. U.S. Dep't of*

14 *Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987). Ultimately, it would be

15 letting the tail wag the dog if the Court allowed subsection (b)(3) of the uncodified

16 Frank's Landing Act 1994 Amendment to control its construction of the IGRA and List

17 Act.

18    The Court's decision today should not be construed to foreclose the Community

19 from obtaining eligibility as an "Indian tribe" under the IGRA. The Community may still

20 seek federal recognition by the Secretary under the applicable regulatory scheme. If the

21 Community is denied recognition after exhausting the Secretary's administrative

22 procedures, it may be entitled to judicial review. However, it would be improper for the

1  Court to conclude that the Community qualifies as an "Indian tribe" under the IGRA

2  when a reasonable construction of applicable statutes suggests otherwise and the

3  Community may yet obtain the recognition it seeks through the Secretary's

4  administrative procedures.

5  <center>**V. ORDER**</center>

6          Therefore, it is hereby **ORDERED** that:

7              1.  The Community's motion for summary judgment (Dkt. 33) is **DENIED**;

8                   and

9              2.  Defendants' cross-motion for summary judgment (Dkt. 38) is **GRANTED**.

10  The Clerk shall enter judgment in favor of Defendants.

11  Dated this 15th day of March, 2017.

12

13  _____

14  BENJAMIN H. SETTLE
   United States District Judge

15

16

17

18

19

20

21

22